IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PAWNEE NATION OF OKLAHOMA, WALTER R. ECHO-HAWK,** *et al.*, Plaintiffs; <br><br> v. <br><br> **RYAN ZINKE,** in his official capacity as Secretary of the United States Department of the Interior, the **UNITED STATES BUREAU OF INDIAN AFFAIRS,** and the **UNITED STATES BUREAU OF LAND MANAGEMENT,** Defendants. | Case No. 16-CV-697-JHP-TLW |

**OPINION AND ORDER**

Now before the Court is the motion to dismiss (Dkt.# 19) of Ryan Zinke, in his official capacity as Secretary of the United States Department of the Interior ("Interior"); the United States Bureau of Indian Affairs ("BIA"); and the United States Bureau of Land Management ("BLM"). Federal Respondents ask the Court to dismiss Plaintiffs' Amended Complaint ("Am. Compl.") (Dkt.# 12) under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. (Dkt.# 19).

BACKGROUND

Plaintiffs, the Pawnee Nation of Oklahoma and a group of individual members of the Pawnee Nation, own partial interests in allotted tracts of land within the boundaries of the former Pawnee reservation. Am. Compl. ¶ 7, 10, 12-21. Plaintiffs allege that BIA has approved seventeen leases (the "Pawnee leases")[1] that permit oil and gas development on tracts of land in

---
[1] Plaintiffs challenge the following leases: 14-20-207-12624, 14-20-207-12625, 14-20-207-12626, 14-20-207-12627, 14-20-207-12644, 14-20-207-12645, 14-20-207-12646, 14-20-207-12647, 14-20-207-12648, 14-20-207-12649, 14-20-207-12650, 14-20-207-12651, 14-20-207-12652, 14-20-207-12653, 14-20-207-12654, 14-20-207-12655, and 14-20-207-12656.

which Plaintiffs allege an ownership interest. *Id.* Owners of allotted lands may lease the mineral interests on their lands, subject to approval by the Secretary of the Interior. 25 U.S.C. § 396. Leases entered into under 25 U.S.C. § 396 are governed by the regulations at 25 C.F.R. Part 212. Those regulations provide that appeals of BIA decisions are governed by 25 C.F.R. Part 2. 25 C.F.R. § 212.58 (citing 25 C.F.R. § 211.58). The regulations governing appeals provide that:

> No decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704, unless when an appeal is filed, the official to whom the appeal is made determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately.

25 C.F.R. § 2.6. The seventeen Pawnee leases were approved by the BIA Superintendent between July 2013 and November 2013. Appeals from the Superintendent's decision are to the appropriate Regional Director (referred to as an "Area Director" in the regulations). *Id*. at § 2.4. Plaintiffs do not allege that they have appealed any of the decisions they challenge here, but claim that they did not receive the requisite notice under the regulations.

Federal Respondents have moved to dismiss a subset of claims in the Amended Complaint. (Dkt.# 19). Federal Respondents have challenged Plaintiffs' First, Fourth, Fifth, and Sixth Causes of Action that challenge the BIA's approvals of the Pawnee leases as violations of the Administrative Procedures Act ("APA") under the National Environmental Policy Act ("NEPA"), the American Indian Agricultural Resource Management Act ("AIARMA"), the National Historic Preservation Act ("NHPA"), and Executive Order 11988. Am. Compl. ¶¶ 73-76; ¶¶ 84-88; ¶¶ 89-91; ¶¶ 92-95. In addition, Federal Respondents move to dismiss Plaintiffs Fourth Cause of Action, which challenges BIA's approval of the Pawnee leases as well as BLM's approvals of Applications for Permits to Drill ("APDs") and sundry notices on the tracts

2

of land covered by the seventeen leases, claiming that the approvals violate the American Indian Agricultural Resource Management Act ("AIARMA"). Finally, although their Sixth Cause of Action is plead as arising under the APA, Plaintiffs have argued that the violations of NEPA, AIARMA, NHPA, and Executive Order 11988 also amount to a breach of the United States' fiduciary trust duties. (Dkt.# 17). The Federal Respondents now move for dismissal of Plaintiffs' claims against them for lack of subject matter jurisdiction, and for failure to state a claim upon which relief may be granted. (Dkt.# 19).

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction . . . , possessing only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When considering a motion under Federal Rule of Civil Procedure 12(b)(1), the burden of establishing the court's subject-matter jurisdiction resides with the party seeking to invoke it, and that party has the burden of establishing jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). Federal subject-matter jurisdiction "cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts." *Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1022 (10th Cir. 2012). If the Court, at any time, determines that it lacks subject-matter jurisdiction, the case should be dismissed. Fed. R. Civ. P. 12(h)(3).

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes Plaintiffs' factual allegations to be true and determines whether they plausibly give rise to claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability. *Id*. (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. *Id*. at 679–80; *Twombly*, 550 U.S. at 555. In addition, Plaintiffs must have a viable legal theory to support their claims. "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"*Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## MOTION TO DISMISS

Federal Respondents raised four challenges to the First Amended Complaint. (Dkt.# 19). First, they argue that the court lacks jurisdiction over all of Plaintiffs' challenges to the seventeen Pawnee leases because Plaintiffs have failed to identify a valid waiver of sovereign immunity. Second the Court lacks jurisdiction over challenges to the seventeen Pawnee leases because Plaintiffs have failed to exhaust administrative remedies. Third, Plaintiffs' Fourth Cause of Action fails to state a valid claim for relief under the AIARMA. Finally, to the extent it raises a claim for breach of a fiduciary trust duty, Plaintiffs' Sixth Cause of Action fails to state a valid claim for relief. The Court will address each argument in turn.

**A.     The Court lacks jurisdiction over all claims challenging the BIA's approval of the Pawnee leases**

It is well settled that sovereign immunity bars suits against the Federal Government absent a waiver. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); "Sovereign immunity is jurisdictional in nature . . . [and] the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Id.* (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Federal Respondents argue that Plaintiffs' claims regarding the seventeen Pawnee leases (the First Cause of Action and parts of the Fourth, Fifth, and Sixth Causes of Action) do not fall within a waiver of sovereign immunity.

4

Plaintiffs invoke federal jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). Am. Compl. ¶ 5. Plaintiffs rely on the APA's waiver of sovereign immunity and claim that they "challenge final agency actions by the BIA and BLM and pursue claims under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq, NEPA, 42 U.S.C. § 4321 et seq., AIARMA, 25 U.S.C. § 3701 et seq., Executive Order 11988, the NHPA, 54 U.S.C. § 300101 et seq., and the federal government's trust responsibilities." *Id.*

The United States' sovereign immunity is not waived under the general jurisdiction statute, 28 U.S.C. § 1331. *See High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1181 (10th Cir. 2006) (noting § 1331 "does not independently waive the Government's sovereign immunity" but "will only confer subject matter jurisdiction where some other statute provides such a waiver."). Plaintiffs rely on the APA for their waiver of sovereign immunity. The APA serves as a limited waiver of sovereign immunity but does not itself grant subject matter jurisdiction to review agency actions. *City of Albuquerque v. United States Dep't of the Interior*, 379 F.3d 901, 906-07 (10th Cir. 2004). "[I]n order to take advantage of the APA's abrogation of immunity, plaintiffs must exhaust administrative remedies and challenge a final agency action." *Blackbear v. Norton*, 93 F. App'x 192, 193 (10th Cir. 2004) (citing *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 549 (10th Cir.2001)). Therefore, in order to invoke this Court's jurisdiction over an APA cause of action, Plaintiffs must demonstrate that jurisdiction is proper under the APA and the substantive statutes they cite such as NEPA, NHPA, AIARMA, and Executive Order 11988, based on Plaintiffs' challenge to "final agency actions by the BIA and BLM." Am. Compl. ¶ 5.

As discussed in more detail below, with regard to Plaintiffs' claims challenging the seventeen Pawnee leases, Plaintiffs have not exhausted administrative remedies as required, and

therefore, the challenged agency action is not "final" for purposes of APA jurisdiction. Since Plaintiffs fail to identify any statute other than the APA that provides a cause of action against Federal Respondents, and there has been no final agency action, the APA does not waive sovereign immunity for Plaintiffs' claims relating to the seventeen Pawnee leases.

### 1. Plaintiffs have failed to exhaust administrative remedies

The exhaustion doctrine dictates that a party is not "entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969) (citation omitted). Thus, exhaustion of administrative remedies is a necessary jurisdictional prerequisite to judicial review. *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295-96 (10th Cir. 2003). "A party must exhaust administrative remedies when a statute or agency rule dictates that exhaustion is required." *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994) (citing *White Mountain Apache Tribe*, 840 F.2d 675, 677 (9th Cir. 1988)). A party is required to exhaust administrative remedies under the APA when expressly required by statute, or "when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993).

Here, the Court finds that exhaustion is mandated by United States Department of Interior regulations governing the Pawnee leases found in 25 C.F.R. Part 2. The BIA regulations at 25 C.F.R. Part 212 provide that decisions of the Superintendent may be appealed pursuant to 25 C.F.R. Part 2. *See* 25 C.F.R. § 212.58 (providing that appeals are governed by 25 C.F.R. § 211.58, which in turn provide that appeals are governed by 25 C.F.R. Part 2). Under 25 C.F.R. Part 2, if an agency decision is subject to appeal to a superior authority within the Department, a party must appeal the decision to the highest authority within the agency before

judicial review is available. *Coosewoon*, 25 F.3d at 924-25 (citing 25 C.F.R. § 2.6(a)); *see also* 43 C.F.R. § 4.314(a) ("No decision of [a] . . . BIA official that at the time of its rendition is subject to appeal to the Board, will be considered final so as to constitute agency action subject to judicial review under 5 U.S.C. [§] 704 . . . ."). Exhaustion "requires that a litigant 'complete the administrative review process' before seeking judicial review." *Gilmore v. Weatherford*, 694 F.3d 1160, 1169 (10th Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Each of Plaintiffs' causes of action related to the Pawnee leases cites to 5 U.S.C. § 706(2)(A), alleging that the BIA's approvals of the Pawnee leases were arbitrary and capricious. Am. Compl. ¶ 76 (First Cause of Action); ¶ 88 (Fourth Cause of Action); ¶ 91 (Fifth Cause of Action); ¶ 95 (Sixth Cause of Action). Plaintiffs do not allege anywhere in their Amended Complaint, however, that they exhausted administrative remedies with respect to the Pawnee leases. Plaintiffs also appear to concede that they have not exhausted administrative appeals in their Response to the Motion to Dismiss, because they argue extensively that they did not receive notice of the decisions, and that the exhaustion requirement should be excused. (Dkt.# 20 at 24-33).

Plaintiffs have failed to exhaust administrative remedies, and the Court lacks jurisdiction over those claims. Accordingly, the First, Fourth, Fifth, and Sixth Causes of Action as they relate to the Pawnee leases must be dismissed for lack of jurisdiction.

## 2. Plaintiffs failure to exhaust cannot be excused

Whether futility or other exceptions are applicable to an administrative exhaustion requirement depends on whether that requirement is statutorily or judicially imposed. *Osage Producers Ass'n*, 191 F. Supp. 3d at 1253. The APA, in 5 U.S.C. § 704 requires exhaustion whenever an agency regulation requires exhaustion, which creates a statutory exhaustion

7

requirement. *Id.* (citing *Darby*, 509 U.S. at 147 and *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). "When 'Congress specifically mandates, exhaustion is required,' and "may not be dispensed with merely by a judicial conclusion of futility.'" *Id.* (internal citations omitted). In other words, where the exhaustion requirement is statutorily imposed, the requirement is a matter of the Court's jurisdiction and cannot be waived. *Coosewoon*, 25 F.3d at 924–25 ("Under Department of Interior regulations, if an agency decision is subject to appeal within the agency, a party must appeal the decision to the highest authority within the agency before judicial review is available."); *Davis v. United States*, 199 F. Supp. 2d 1164, 1179 (W.D. Okla. 2002) ("[E]xhaustion of the appeal procedures [under 25 C.F.R. § 2.6(a)] is a jurisdictional prerequisite to judicial review."), *aff'd sub nom. Davis ex rel. Davis v. United States*, 343 F.3d 1282 (10th Cir. 2003).[2] The BIA's exhaustion requirement is a jurisdictional prerequisite to judicial review. It cannot be waived by the Court, and it cannot be excused for equitable reasons as Plaintiffs suggest. *See Osage Producers Ass'n*, 191 F. Supp. 3d at 1255 ("taken together, 5 U.S.C. § 704 and 25 C.F.R. §§ 2.6(a), 2.8, and 226.69 require exhaustion of the petitioner's claims to compel agency action and that the court cannot excuse these required procedures on futility grounds.").[3]

---

[2] By contrast, where the exhaustion requirement is judicially created, it may be waived for equitable reasons. *Gilmore v. Salazar*, 694 F.3d 1160, 1166 (10th Cir. 2012).

[3] Even if the exhaustion requirement were not a jurisdictional requirement, the Court would find that Plaintiffs have failed to establish that they are entitled to a waiver. Plaintiffs allege that the BIA failed to notify them when the Pawnee leases were approved. However, even if the BIA failed to give any notice of the decision, Plaintiffs are not excused from exhausting their administrative remedies. A BIA official making a decision "shall give all interested parties known to the decision maker written notice of the decision by personal delivery or mail." 25 C.F.R. § 2.7(a). Written notice must include a statement that the decision may be appealed and detail the appeal procedures. *Id*. § 2.7(c). "Failure to give such notice shall not affect the validity of the decision or action but the time to file a notice of appeal regarding such a decision shall not begin to run until notice has been given." *Id*. § 2.7(b). Thus, if the BIA fails to properly notify an interested party, the time to appeal the decision is extended, but Plaintiff's obligation to pursue an administrative appeal before filing suit in federal court is unchanged. *See Begay v. Pub. Serv. Co. of N.M.*, 710 F. Supp. 2d 1161, 1205 (D.N.M. 2010) ("Failure of the BIA to provide a notice does not necessarily cancel the administrative-remedy process. Instead,

In summary, Plaintiffs have not identified a valid waiver of sovereign immunity that allows their claims challenging the seventeen Pawnee leases to proceed. Plaintiffs have failed to exhaust administrative remedies with regard to the challenged approvals of the Pawnee leases. The exhaustion requirement under the relevant BIA regulations is jurisdictional for purposes of Plaintiffs' APA challenges. Even if the requirement were not a jurisdictional prerequisite, Plaintiffs have failed to demonstrate their entitlement to any kind of waiver of the exhaustion requirement. As a result, Plaintiffs have failed to identify a final agency action that is subject to judicial review under the APA. The Court therefore lacks jurisdiction over Plaintiffs' challenges to the BIA's approval of the Pawnee leases. Plaintiffs' First Cause of Action must be dismissed in its entirety for lack of jurisdiction because it challenges only the Pawnee leases. Plaintiffs' Fourth, Fifth, and Sixth Causes of Action must also be dismissed for lack of jurisdiction to the extent they raise APA challenges to the approval of the seventeen Pawnee leases.

**A.      Plaintiffs have failed to state a valid claim for relief under the AIARMA**

Plaintiffs contend that AIARMA requires BLM and BIA to make oil and gas leasing and permitting decisions that comply with Pawnee tribal laws. Plaintiffs claim that because the approvals of the Pawnee leases and the associated APDs allegedly fail to comply with Pawnee Nation laws, the decisions violate AIARMA and are therefore arbitrary and capricious under the APA.

AIARMA recognizes the government-to-government relationship between the United States and Indian tribes and the general trust relationship to protect and conserve Indian

---

failure of the agency to give notice of the initial agency action simply extends the time in which the plaintiff can appeal the action.") (citing *Cheyenne-Arapaho Tribes Okla. v. United States*, 966 F.2d 583, 588 (10th Cir. 1992)). Therefore, even if Plaintiffs received no notice from the BIA regarding the approvals of the Pawnee leases, Plaintiffs are still obligated to exhaust administrative remedies. *Lenker v. Haugrud*, No. 16-CV-0532-CVE-PJC, 2017 WL 539599, *3 (Feb. 9, 2017 N.D. Okla.).

agricultural lands consistent with the United States' fiduciary obligation. 25 U.S.C. §§ 3701-3746. AIARMA, as its name makes clear, however, is centered on the United States' participation in *agricultural* "land management activities" under the Act. *See* 25 U.S.C. § 3712 (titled "Indian Participation in Land Management Activities").

The statute defines "land management activities" as activities "in support of the management of Indian agricultural lands" such as "preparation of soil and range inventories," "irrigation delivery system development," "protection against agricultural pests," and "administration and supervision of *agricultural leasing and permitting* activities." 25 U.S.C. § 3703(12) (emphasis added). The statute provides that the definition includes, "but [is] not limited to" the listed definitions. Given the scope of the statute and the clear topical focus of the listed items, there is no plausible reading of the list that would expand it to cover oil and gas leasing activities. Other terms that would fall within the scope of "including but not limited to" must be of the same character. *Bloate. v. United States,* 559 U.S. 196, 209 (2010) (holding that a broad reading of the phrase "including but not limited to" "would violate settled principles of statutory construction because it would ignore the structure and grammar of [the statute], and in so doing render even the clearest of the subparagraphs indeterminate and virtually superfluous."); *see also United States v. Osage Wind, LLC*, No. 14-CV-704-JHP-TLW, 2015 WL 5775378, at *6 (N.D. Okla. Sept. 30, 2015) (same), *appeal docketed,* No. 15-5121 (10th Cir. Dec. 2, 2015). This point is highlighted by the fact that there is an expansive well-defined body of statutes and regulations specifically governing oil and gas leasing activities on federal lands. 25 U.S.C. § 396; 25 C.F.R. Part 212; 43 C.F.R. Part 3160. The AIARMA, by contrast, governs an entirely different class of leasing activities – namely agricultural leasing and management activities.

In carrying out these specific "land management activities the statute provides that" the "Secretary shall comply with tribal laws and ordinances pertaining to Indian agricultural lands," unless otherwise prohibited by federal law. *Id*. § 3712(b). AIARMA does not itself set forth specific trust duties and states that "[n]othing in this chapter shall be construed to diminish or expand the trust responsibility of the United States toward Indian trust lands or natural resources, or any legal obligation or remedy resulting therefrom." *Id*. § 3742. By its terms, AIARMA does not apply to oil and gas leasing and permitting activities that Plaintiffs challenge in their Amended Complaint. Oil and gas leasing and permitting activities are governed by 25 U.S.C. § 396 and the regulations at 25 C.F.R. Part 212 (for leasing activities) and 43 C.F.R. Part 3160 (for oil and gas operations activities).

Plaintiffs' Fourth Cause of Action alleges that BIA's and BLM's oil and gas leasing decisions did not comply with AIARMA because they failed to abide by Pawnee environmental laws. Am. Compl. ¶ 67, 69. But the provisions of AIARMA that require compliance with tribal laws address only "land management activities" which are specifically defined in the statute. 25 U.S.C. § 3712 (titled "Tribal participation in *Land Management Activities*")(emphasis added); 25 U.S.C. § 3703(12) (defining land management activities). The regulations passed to implement AIARMA are regulations that govern *agricultural* leasing. 25 C.F.R. §§ 162, 166; *Fredericks v. United States*, 125 Fed. Cl. 404, 418 (2016) ("In 2001, the Interior Department promulgated regulations implementing AIARMA, codifying those rules at 25 C.F.R. §§ 162 (leases) and 166 (permits)"). Those regulations in Sections 162 and 166 deal explicitly and exclusively with agricultural leases and permits—not oil and gas leases. Nothing in the AIARMA amends or supersedes the long-standing statutes and regulations that govern oil and gas leasing administered by the BLM and BIA.

Indeed, Plaintiffs' expansive reading of the statute would treat it as an implied repeal of BIA's and BLM's statutory and regulatory regime for oil and gas leasing and operations—a result that is highly disfavored. *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) ("[a]n implied repeal will only be found where provisions in two statutes are in irreconcilable conflict, or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute."). Plaintiffs have not provided any authority or any citation in the legislative history that would support the expansive reading of AIARMA that they now propose.

If the Court were to permit Plaintiffs' AIARMA claim to move forward, it would force the Court to assess whether the leases and permits at issue were required to comply with a statute that does not apply to oil and gas leasing or permitting. If Plaintiffs' theory that AIARMA applies to oil and gas leasing were correct, it is difficult to conceive of any activity that takes place anywhere on land that might be used for agriculture that would not be forced to comply with AIARMA, and, by extension, every tribal ordnance, regulation, and statute that also covers those activities. Plaintiffs cite no authority for this expansive interpretation of the AIARMA and it does not appear to be a reasonable reading of the statutory language. The statute governs a narrow scope of activities specifically related to agriculture, not every activity that happens to occur on land that might be suitable for agriculture. Thus, even accepting all of Plaintiffs' factual allegations as true, they cannot state a plausible claim for relief based on AIARMA to challenge leasing and permitting decisions to which the AIARMA by definition does not apply. Plaintiffs can prove no set of facts that would entitle it to relief on its Fourth Cause of Action premised on a violation of AIARMA. *Brakebill v. Bank of Am. Corp.*, No. CIV-15-185-SPS, 2015 WL 5311281, at *2-3 (E.D. Okla. Sept. 11, 2015) (dismissing case for failure to state a claim because the statute identified in plaintiff's complaint did not apply.). Plaintiffs' Fourth

Cause of Action should therefore be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

**B.     Plaintiffs' claim for breach of a trust duty fails to state a valid claim for relief**

As discussed above, Plaintiffs' Sixth Cause of Action is alleged as a violation of the APA, citing 5 U.S.C. § 706(2) as the basis for the claim. Am. Compl. ¶ 95. However, in the Parties' Joint Status Report filed March 27, 2017, Plaintiffs allege that their Sixth Cause of Action also raises a cause of action for breach of fiduciary trust duties. (Dkt.# 17). The Court does not find that the Sixth Cause of Action was properly plead as a claim for breach of a fiduciary trust duty. Nevertheless, to the extent Plaintiffs are now claiming that it should be treated as a claim for a breach of trust duty, the Court will analyze whether it could state a valid claim for relief under that theory.

"The trust obligations of the United States to the Indian tribes are established and governed by statute rather than the common law[.]" *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011). Thus, in order to bring a claim for breach of trust, the Tribe "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) (citation omitted); *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 757 (2016); *El Paso Nat. Gas Co. v. United States*, 774 F. Supp. 2d 40, 51–52 (D.D.C. 2011), aff'd, 750 F.3d 863 (D.C. Cir. 2014). This "analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *Id*.

While the general trust relationship allows the federal government to consider and act in the tribes' interests in taking discretionary actions, it does not impose a duty on the federal government to take action beyond complying with generally applicable statutes and regulations. *Jicarilla Apache Nation*, 564 U.S. at 165 (2011). In the absence of specific fiduciary duties, the

government's general trust responsibilities are discharged by compliance with generally applicable regulations and statutes. *See, Gros Ventre Tribe v. United States*, 344 F. Supp.2d 1221, 1226 (D. Mont. 2004) (citing *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 574 (9th Cir. 1998), *aff'd,* 469 F.3d 801 (9th Cir. 2006)). For example, the Ninth Circuit in *Morongo Band* concluded that the FAA sufficiently discharged its general trust responsibility to the Band by complying with general regulations and statutes, such as NEPA, when the Band could not otherwise point to a specific duty placed on the government with respect to the Band that would require more. 161 F.3d at 574-82. "Without an unambiguous provision by Congress that clearly outlines a federal trust responsibility, courts must appreciate that whatever fiduciary obligation otherwise exists, it is a limited one only." *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir. 1995).

Here, Plaintiffs have not identified any statutes or regulations that give rise to a specific fiduciary duty. Plaintiffs allege only that the Federal Respondents have not complied with NEPA, Executive Order 11,988, NHPA, and AIARMA. Am. Compl. ¶¶ 93-94. None of these statutes set forth specific fiduciary trust duties. None of these generally applicable statutes set forth the specific enforceable trust duties that are required to state a valid claim for breach of trust. *See, Okanogan Highlands Alliance*, 236 F.3d at 479 (In approving a gold mine, Bureau of Land Management satisfied its trust obligations by the agency's compliance with NEPA); *Morongo Band*, 161 F.3d at 574 (holding that the United States general trust relationship is discharged by compliance with the NHPA); *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 898 (D.C. Cir. 2014) (AIARMA does not "impose independently enforceable trust duties"); see also, *Watershed Assocs. Rescue v. Alexander*, 586 F. Supp. 978, 988 (D. Neb. 1982) (citing a "lack of precedent holding that the Executive Order 11988 is enforceable through a private cause

of action" and its "own finding that under relevant Eighth Circuit precedent, the executive order cannot be held to have the force and effect of law."); *but see Daingerfield Island Protective Soc. v. Babbitt*, 823 F. Supp. 950, 961 (D.D.C.), *aff'd in part*, 15 F.3d 1159 (D.C. Cir. 1993), supplemented, 40 F.3d 442 (D.C. Cir.), and *aff'd*, 40 F.3d 442 (D.C. Cir. 1994) (noting that "[o]ther courts are split on the enforceability of E[xecutive] O[rder] 11988 either privately or under the APA").[4] Accordingly, even if all of the facts plead in the Amended Complaint are accepted as true, Plaintiffs' alleged breaches of trust equate to a violation of a general trust relationship, which does not set forth a valid cause of action. *United States v. Navajo Nation*, 556 U.S. 287, 302 (2009) (Because the Tribe cannot identify a specific, applicable, trust-creating statute or regulation that the Government violated . . . the case is remanded with instructions to affirm the Court of Federal Claims' dismissal of the Tribe's complaint.")

If Federal Respondents violated NEPA, the NHPA, or other statutes of general applicability, Plaintiffs' recourse lies in a challenge under the APA, or other statutes that provide a cause of action for such a challenge (subject to a proper waiver of sovereign immunity and subject matter jurisdiction). But Plaintiffs cannot transform an ordinary claim for an APA violation into a breach of trust theory—the Supreme Court requires a specific statute or regulation that gives rise to an enforceable trust duty. That requirement is not present here, and Plaintiffs' Sixth Cause of Action is therefore dismissed in its entirety to the extent it is based on

---

[4] However, even courts that have held that Executive Order 11,988 is independently enforceable, have held only that it is reviewable under the APA. *City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997) ("We hold that . . . Executive Order[] 11988 [is] subject to judicial review under the Administrative Procedure Act."). Even if Plaintiffs could bring an APA challenge premised on Executive Order 11,988, there is no authority to support a breach of trust claim premised on the order, as it does not give rise to any specific fiduciary duties on the part of the United States. *See United States v. Navajo Nation*, 537 U.S. 488, 506 (2003)

breach of trust duties, because Plaintiffs have not identified a specific statute or regulation giving rise to a trust duty.

## CONCLUSION

Having considered the arguments set forth in the parties' briefing relating to Federal Respondents' Motion to Dismiss (Dkt.# 19), the Court finds that the Motion to Dismiss is **GRANTED**. Plaintiffs' First Cause of Action is dismissed in its entirety for lack of jurisdiction. Plaintiffs' Fourth, Fifth, and Sixth Causes of Action are also dismissed for lack of jurisdiction to the extent that they raise challenges to the approvals of the seventeen Pawnee leases identified in Plaintiffs' Amended Complaint. Plaintiffs' Fourth Cause of Action is also dismissed in its entirety for failure to state claim under Federal Rule of Civil Procedure 12(b)(6). To the extent Plaintiffs' Sixth Cause of Action alleges a claim for breach of a fiduciary trust duty, it is also dismissed for failure to state a claims under Federal Rule of Civil Procedure 12(b)(6).

**IT IS SO ORDERED** this 14th day of September, 2017.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma