IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PAWNEE NATION OF OKLAHOMA; WALTER R ECHO-HAWK; LANCE ECHO-HAWK; BERNADETTE ECHO-HAWK; ALVIN GEORGE ECHO-HAWK; GEORGE T. ECHO-HAWK; DAVID D. ECHO-HAWK; HELEN NORRIS; HELAIRE ECHO-HAWK; HOWARD ECHO-HAWK; HOLLY ECHO-HAWK; and DEBRA ECHO-HAWK, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-CV-697-JHP-JFJ |
| UNITED STATES BUREAU OF INDIAN AFFAIRS; UNITED STATES BUREAU OF LAND MANAGEMENT; and KEVIN HAUGRUD, in his official capacity as acting Secretary of the United States Department of the Interior, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is Federal Defendants' Motion to Strike Extra-Record Materials Submitted with Plaintiffs' Opening Merits Brief (ECF No. 73), which was referred by United States District Judge James H. Payne (ECF No. 82). For reasons explained below, the Motion to Strike is denied.

**I.  Procedural History and Description of Challenged Exhibits**

In their First Amended Complaint, the Pawnee Nation of Oklahoma ("Pawnee Nation") and eleven individual members of the Pawnee Nation challenged certain decisions by Defendant federal agencies ("Federal Defendants") related to oil and gas drilling on Pawnee allotments in the Cimarron River Valley. Specifically, Plaintiffs challenged Federal Defendants' decisions to: (1) approve seventeen oil and gas leases ("Leases"); (2) approve Applications for Permits to Drill issued in August 2015 and February 2016 ("APDs"), which authorized lessee Crown Energy

("Crown") to drill oil and gas wells on the Leases; and (3) approve specific requests by Crown related to water use and disposal for certain drilled wells ("Water Requests"), which occurred in the spring and summer of 2016.[1] Plaintiffs alleged the Federal Defendants, in approving the Leases, APDs, and Water Requests, failed to comply with the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), Executive Order 11,988 ("EO 11988"), the American Indian Agricultural Resource Management Act ("AIARMA"), and other laws, all resulting in grounds for reversal of such decisions under the Administrative Procedures Act ("APA"). Finally, Plaintiffs alleged the Federal Defendants breached trust obligations to the Pawnee Nation.

On September 14, 2017, Judge Payne issued an Opinion and Order ruling on Federal Defendants' motion to dismiss. Following dismissal of certain claims by Judge Payne, the remaining issues are whether the Federal Defendants' approvals of the APDs and Water Requests should be set aside under the APA. In compliance with the Amended Case Scheduling Order (ECF No. 70), Federal Defendants completed the administrative record ("AR"),[2] and the parties filed briefs on the merits of the administrative appeal.

Without moving to supplement the AR, Plaintiffs attached three extra-record exhibits to their opening brief. Exhibit 1 consists of eleven total declarations, three by Pawnee Nation officials and eight by individual tribal members who are partial owners of the allotment affected by the oil and gas approvals at issue (collectively "Plaintiffs' Declarations"). Generally, the

---

[1] The Agencies' approvals of the Water Requests are in the form of Sundry Notices.

[2] The Court previously resolved issues related to *completion* of the AR. *See* ECF Nos. 48, 54. The current motion relates to whether the Court will permit *supplementation* of the AR with evidentiary materials submitted by Plaintiffs. *See Ctr. for Native Ecosystems v. Salazar*, 711 F Supp. 2d 1267, 1274 (D. Colo. 2010) (explaining that courts permit two types of additions to the AR: (1) materials actually considered by the agency but omitted from the AR, which "complete" the AR; and (2) materials not considered by the agency, but that are necessary for a court to conduct a substantial inquiry into the administrative decision, which "supplement" the AR).

declarations allege harm flowing to the Pawnee Nation and individuals as a result of the challenged agency decisions. For example, the Executive Director of the Pawnee Nation declares that the decisions contravene the Pawnee Nation's laws and harm the Nation's natural resources. The Chief Operating Officer for the Pawnee Tribal Development Corporation discusses the adverse effects of the approval decisions on the Nation's environmental resources, such as the flooding of a well pad that negatively affected the Cimarron River. Another official discusses Crown threatening detention of a Pawnee tribal member, Walter Echo-Hawk, if he visited a drilling site without obtaining approval of the Nation. The declarations of individual tribal members discuss harm to their specific allotments allegedly caused by approval of the APDs, such as spills of oil and salt water and water diversion from the Cimarron River.

Exhibit 2 consists of the Declaration of Ava Farouche ("Farouche"), an attorney for Plaintiffs, which describes two maps attached to the declaration as Exhibit A ("FEMA map") and Exhibit B ("well location map"). Exhibit 3 consists of a letter from the Bureau of Indian Affairs to Michael Freeman, counsel for Plaintiffs, dated May 24, 2018 ("5/24/18 letter"), stating that approval of certain leases that were originally challenged in this litigation did not comply with NEPA and were invalid.

## II. Federal Defendants' Motion to Strike Exhibits 1-3

Federal Defendants move to strike Exhibits 1-3 based on Plaintiffs' failure to obtain leave of court to supplement the AR. Federal Defendants move to strike Plaintiffs' Declarations (Exhibit 1) as improper attempts to invite the Court to substitute its judgment for that of the agency regarding environmental impact of approvals of the APDs and Water Requests. Federal Defendants move to strike the FEMA map, and accompanying portions of Farouche's declaration (portions of Exhibit 2), as an improper attempt to contradict the agency's expert conclusion that no floodplains were present on one of the approved sites. Federal Defendants do not raise specific

3

challenges or arguments regarding the 5/24/18 letter or the well location map, and do not object to their inclusion in the AR on any grounds except Plaintiffs' failure to obtain leave of Court. For reasons explained below, the Court permits supplementation of the AR with all of Exhibits 1-3 and denies the Motion to Strike.

A.  **Legal Standards Governing Supplementation of AR**

"Judicial review of agency action is normally restricted to the administrative record." *Citizens For Alternatives To Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007). Courts may permit supplementation and consider extra-record evidence in "extremely limited circumstances." *Id.* Such circumstances generally may include: "(1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong." *Custer Cty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1027 n.1 (10th Cir. 2001) (citing *Am. Min. Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985)). Courts have also recognized that extra-record evidence may be relevant "where there are gaps or inadequacies in the NEPA process." *Rags Over the Arkansas River, Inc. v. Bureau of Land Mgmt.*, No. 1:12-CV-00265-JLK, 2014 WL 12741064, at *1 (D. Colo. Mar. 28, 2014) (referring to this circumstance as "NEPA exception"). Any exceptions to the presumption of regularity and fullness of the record are narrowly construed, and the party seeking supplementation bears the burden of proving an exception applies. *Id.*

In contrast to extra-record evidence offered in support of reversal of the agency's decision, courts may freely consider extra-record evidence offered solely for the purpose of establishing a

plaintiff's standing. *U.S. Magnesium, LLC v. U.S. E.P.A.*, 690 F.3d 1157, 1165 (10th Cir. 2012). Because Article III standing requirements do not apply to agency proceedings, facts relevant to standing are not typically part of the administrative record. *Id.* In challenging agency action, plaintiffs must "'take pains to supplement the record in any manner necessary to enable [courts] to address with as much precision as possible any question of standing that may be raised.'" *Id.* (quoting *Pennell v. City of San Jose*, 485 U.S. 1, 8 (1988)).

B. **Court Excuses Procedural Deficiency**

Although a motion to supplement is the proper procedural course, the Court exercises its discretion to decide the issues on the merits. The Court is mindful that Plaintiffs bear the burden of proving supplementation is proper.

C. **Plaintiffs' Declarations Are Properly Submitted for Purpose of Standing**

In their response to the Motion to Strike, Plaintiffs represented that Plaintiffs' Declarations were offered solely for purposes of establishing standing and not in support of the merits of their appeal. *See* ECF No. 74 at 4 (stating that Motion to Strike "disregards the entirely proper purpose for which the standing declarations are offered").[3] In their reply, Federal Defendants agreed that standing declarations are generally permissible but moved to strike any portions of the declarations that are not "necessary" to a standing analysis. *See* ECF No. 81 at 5.

Consistent with Tenth Circuit law, the Court permits supplementation of the AR with Plaintiffs' Declarations solely for the purpose of establishing Plaintiffs' standing. *See U.S.*

---

[3] This "limited purpose" was not clear from Plaintiffs' opening brief. The brief does not mention standing and cites the declarations in support of what appear to be "merits" arguments at least four times. *See* ECF No. 71 at 15, 16, 17, 20. Federal Defendants were justified in filing the Motion to Strike and seeking clarification from Plaintiffs and the Court as to the proper use of Plaintiffs' Declarations.

5

*Magnesium, LLC*, 690 F.3d at 1165.[4]  To be clear, Plaintiffs disavowed any reliance on the declarations in support of their merits position, and the declarations will not be considered for that purpose.

The Court rejects the Federal Defendants' request to strike certain portions of the Pawnee Nation officials' declarations that are not "necessary" or relevant to a standing analysis. Federal Defendants urge the Court to strike statements by Pawnee officials regarding any impact on the Pawnee Nation's environmental resources, because the Pawnee Nation is not asserting *parens patriae* standing. However, the declarations of Pawnee officials invoke certain language that may be relevant to a *parens patriae* standing analysis. *See* Gray Decl. at ¶ 3 (stating that "[t]he oil and gas approvals challenged in this litigation threaten the safety, well-being, property, and interests of the Nation" and "adversely affect the Nation's governmental interests, including causing risks of harm to land, water, property, and other resources for which the Nation is responsible"). *See generally Kickapoo Tribe of Okla. v. Lujan*, 728 F. Supp. 791, 795 (D.D.C. 1990) (explaining that *parens patriae* doctrine allows a sovereign to bring an action on behalf of the interests of all of its citizens such as interstate water rights, pollution-free interstate waters, protection of the air from interstate pollutants, and the general economy of the state). The Court will not attempt to determine whether the Pawnee Nation invokes that doctrine or undertake any standing analysis, because it is not necessary to deciding the Motion to Strike. Standing issues have not been developed, and this Court will not predict what facts may be relevant to any standing analysis conducted by the district court or on appeal. If any information is deemed irrelevant to standing issues that may arise, the district or appellate court may simply decline to consider the extraneous information.

---

[4] Plaintiffs did not seek to establish any exceptions to the administrative record rule with respect to Plaintiffs' Declarations, and the Court does not reach the issue of whether any information in the declarations would qualify for such an exception.

### D. FEMA Map/Farouche Declaration Qualify for Exceptions

In relevant part, Farouche's declaration provides:

> I prepared a map, as described herein, to determine whether the Francis #1-9MH well lies within a designated Federal Emergency Management Agency ("FEMA") 100-year floodplain.
>> a. The administrative record provides latitude and longitude coordinates for the subject well.
>> b. I used the on-line mapping platform provided by the Oklahoma Water Resources Board, located at http://www.owrb.ok.gov/floodplain/index.php to create simple maps of the subject well site. This mapping tool shows FEMA designated flood plain areas.
>> c. This mapping platform allows users to enter latitude and longitude coordinates to find exact locations. I entered the latitude and longitude coordinates provided in the administrative record for the subject well. The mapping tool provides and visualizes the exact location of the coordinates.
>> d. Because the mapping tool shows flood plain areas, and also shows the location of the coordinates that I entered, a simple visual analysis verifies that the location of the subject well does lie within FEMA-designated 100-year flood plain.
>
> 8. The map I prepared using the Oklahoma Water Resources Board mapping platform is attached as Exhibit A.

ECF No. 71-2.

Before turning to its analysis, the Court briefly explains the pertinent section of the merits briefing and the AR. Federal Defendants argue that the area of the Double R9 wells (including the Francis #1-9MH) was not located in a floodplain, that the AR supports that finding, and that the requirements of EO 11988 were never triggered or violated. ECF No. 72 at 23.[5] As record support for that finding, Federal Defendants cite an environmental assessment stating that the "no floodplain" conclusion was based on "'onsite visits, reports submitted by Environmental Solutions, LLC, and other data sources.'" ECF No. 72 at 22 (quoting environmental assessment).

---

[5] The purpose of EO 11988 is "to avoid to the extent possible the long and short term adverse impacts associated with occupancy and modification of floodplains and to avoid direct or indirect support of floodplain development wherever there is a practicable alternative." Exec. Order No. 11988, 42 Fed. Reg. 26951, 26951 (May 24, 1977). EO 11988 "does not mandate a 'no-development' policy in flood plains," but "it does direct federal agencies to avoid adverse impacts in flood plains." *New Mexico Oil & Gas Ass'n v. Dep't of the Interior*, No. CIV980022JCRLPACE, 1999 WL 35809815, at *3 (D.N.M. Feb. 26, 1999).

7

Plaintiffs contend this finding is merely a checked box that lacks explanation or reasoning, lacks evidentiary support in the record, and is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. ECF No. 78 at 12-14. Plaintiffs cite the FEMA map to demonstrate that the "no floodplain" finding "contradicted the federal government's own maps, which show that the wells are in the floodplain." ECF No. 78 at 13.

The Court finds that Plaintiffs have met their burden to supplement the AR under two exceptions: (1) agency action that is not adequately explained and cannot be reviewed properly without considering the cited materials, and (2) where an agency record is deficient because the agency ignored relevant factors it should have considered in making its decision. *See Garvey*, 256 F.3d at 1027 n.1. The AR does not explain how the "no floodplain" conclusion was reached or cite any alternative floodplain map utilized by the agency. Although the AR states that an on-site visit occurred and that "other data" was consulted, it does not explain how the on-site visit, the Environmental Solutions report, or "other data" led to the conclusion. Nor do these supporting documents appear to be part of the AR. EO 11988 defines floodplain as "the lowland and relatively flat areas adjoining inland and coastal waters including floodprone areas of offshore islands, including at a minimum, that area subject to a one percent or greater chance of flooding in any given year." Exec. Order No. 11988, 42 Fed. Reg. 26951, 26956 (May 24, 1977). The FEMA map appears to indicate that the approved site fits this definition, because it lies within a 100-year floodplain, or an area with a one percent or greater chance of flooding in any given year. Although there may be reasons the FEMA map is irrelevant to the agency's decision, is not an important factor in the decision, or was deemed incorrect based on better "onsite" evidence, Federal Defendants offered no such explanation in their briefing on the Motion to Strike or the merits of the appeal. Nor is this clear from the AR. Under these circumstances, the Court agrees with Plaintiffs that supplementation with the FEMA map is necessary to: (1) review the reasonableness

and plausibility of the agency conclusion, considering the FEMA map and the absence of other record evidence explaining or supporting the "no floodplain" conclusion, and (2) to determine whether a relevant factor in the "no floodplain" conclusion (the FEMA map) was ignored in approving the relevant APD. *See Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 347 F. Supp. 2d 1061, 1067 (D. Utah 2004) (permitting supplementation where plaintiff sought to demonstrate the agency ignored relevant factors that should have been considered in the decision making process and relied on certain factors without underlying factual support in the record); *Lee*, 354 F.3d at 1242 (explaining, in specific NEPA context, that extra-record evidence may be used to illuminate whether an environmental impact statement has neglected to mention a serious environmental consequence or swept problems under the rug).

The Court further concludes that Farouche is not offering an "expert declaration" contrary to the conclusion reached by the agency. Although Farouche stated that she "prepared" the FEMA map, her declaration simply described the process she used to print the FEMA map using the relevant online tool that is available to the public. The Court produced an identical printout from the referenced website in less than one minute by inputting the coordinates from the AR. Farouche did not manipulate the online resource tool or use any expertise. Nor is she reaching any expert conclusion by declaring what the map depicts. Any individual who plugs the coordinates in the relevant online tool will necessarily reach the same "conclusion" that the dot lies within the 100-year floodplain, at least as defined by FEMA. The coordinates are not on a boundary line, and there is nothing "expert" about this attorney's declaration explaining her process of printing the map. *Cf. Lee*, 354 F.3d at 1242 (affirming striking of extra-record expert declaration that conflicted with agency expert's conclusion or methodology); *Rags Over the Arkansas River, Inc.*, 2014 WL 12741064, at *2 (D. Colo. Mar. 28, 2014) (denying motion to supplement where expert declaration indicated a "methodological dispute" between two experts and sought to "inject the

declarant's personal views about the project's social utility"). Accordingly, the Court finds Plaintiffs have met their burden and will permit supplementation of the AR to include Exhibit 2, including the Farouche declaration and FEMA map.[6]

### III. Conclusion

Federal Defendants' Motion to Strike Extra-Record Materials Submitted with Plaintiffs' Opening Merits Brief (ECF No. 73) is DENIED. The Court permits supplementation of the AR with Exhibits 1-3 attached to Plaintiffs' opening brief.[7]

**SO ORDERED** this 8th day of January, 2020.

*[signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**

---

[6] Plaintiffs also urge the Court to take judicial notice of the adjudicative fact that the relevant coordinates lie within a FEMA-designated floodplain. While judicial notice may provide an alternative or additional basis to consider the relevant information, that issue is better decided by the district judge deciding the merits of the appeal. *See Sierra Club v. Fed. Highway Admin.*, No. 17-CV-01661-WJM-MEH, 2018 WL 1695402, at *11 (D. Colo. Apr. 6, 2018) (explaining, in context of referred motion to supplement the AR, that whether to take judicial notice "is an issue better left to the judicial officer who decides the merits of the case").

[7] Federal Defendants did not raise any specific objection or arguments relating to the well location map or the 5/24/18 letter. The well location map simply depicts the wells' proximity to one another based on information that is already contained in the AR. The 5/24/18 letter is a letter from the BIA to Plaintiffs' counsel. Federal Defendants do not appear to object to inclusion of these exhibits, and the Court permits them as supplements.